IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| LETICIA RASCON | § | |
| | § | |
| v. | § | A-05-CA-1072 LY |
| | § | |
| AUSTIN I.S.D. | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges, as amended.

Before the Court is Defendant Austin Independent School District's Motion for Summary Judgment (Clerk's Doc. No. 33), the Plaintiff's Response (Clerk's Doc. No. 41), AISD's Reply (Clerk's Doc. No. 51), Plaintiff's Surreply (Clerk's Doc. No. 58), and AISD's Response to Plaintiff's Sur-Reply (Clerk's Doc. No. 62).

## I. BACKGROUND

In this case, Leticia Rascon sues the Austin Independent School District alleging a common law breach of contract claim, and two Title VII retaliation claims. In brief, Rascon was employed by AISD from 1995 to 2004. Her last position was as an assistant principal at Covington Middle School, where she reported to Karon Rilling, the principal. Rascon contends that Rilling harassed her and, when she complained about Rilling in a grievance, Rilling retaliated against her. Rascon eventually filed a charge of discrimination with the EEOC (and Texas Workforce Commission)

alleging retaliation. Prior to the EEOC's completion of its investigation of the charge, AISD and Rascon reached an agreement to resolve the charge. In exchange for Rascon withdrawing her charge and resigning her position, the District agreed that it would remove Rilling's unfavorable evaluation from Rascon's files, and would ensure that all requests for references from any of Rascon's prospective employers would be directed to one of two AISD employees (neither of which were Rilling).

Several months after the execution of the settlement agreement, a school district in Arizona called AISD's human resources department for a reference on Rascon, and – in what would appear to be a plain breach of the settlement agreement – the HR department forwarded the caller to Rilling. Rilling responded to the call be stating that all she could do was confirm that Rascon had been employed as an assistant principal under Rilling. When asked if that was all she could say, Rilling stated "yes," and then added "God bless you." When she learned of these events, Rascon filed another charge of discrimination, alleging that the response to the reference request violated the original settlement agreement, and amounted to prohibited retaliation. When she received a right to sue letter, she filed this suit alleging that AISD had breached the settlement agreement, and had retaliated against her under Title VII for making a charge of discrimination. In the Title VII claim, Rascon complains of both Rilling's initial retaliation for the grievance (which led to the first charge of discrimination that ended in the settlement agreement), and of the subsequent negative reference.

AISD now moves for summary judgment on all claims in the suit. AISD's arguments are several. First, in a claim one might generously describe as "reminiscent" of AISD's earlier motion to dismiss (it is in fact identical), AISD contends that Rascon failed to exhaust administrative remedies required under Texas law prior to filing her breach of contract claim. AISD also contends

that there is no issue of fact that it did not in fact breach its settlement agreement with Rascon. Finally, it contends that Rascon has failed to demonstrate she suffered any damages if in fact the contract was breached. As for the retaliation claims, AISD contends that there are no fact disputes regarding the events surrounding the phone call, and as a matter of law it did not retaliate against Rascon for filing the EEOC charge when it forwarded the prospective employer's call to Rilling. It also argues that Rascon has failed to demonstrate a prima facie case of retaliation, because AISD's actions in responding to the call do not amount to an "adverse employment action." Finally, AISD contends that the original retaliation claim cannot proceed, because Rascon never obtained a right to sue letter on that claim, since she withdrew it prior to the EEOC investigating the claim.

## II. STANDARD OF REVIEW

The standard of review for a summary judgment motion is well-known. Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In making this determination, the Court views the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant. *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). "[T]he nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The nonmovant may not rely on mere allegations in the pleadings. *Id*. Unsupported allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a proper motion for summary judgment. *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995). Rather,

the nonmoving party must set forth specific facts showing the existence of a "genuine" issue concerning every essential component of its case. *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 777 (5th Cir. 1997). The standard of review "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  FACTS

As noted above, on a summary judgment motion, the Court views the evidence in the light most favorable to the non-movant – here Rascon – and all reasonable doubts about the facts must also be resolved in favor of Rascon. *Bryan*, 375 F.3d at 360. With this standard in mind, the the summary judgment evidence reflects the following facts.

Rascon began her employment with AISD in 1995 and was promoted to an administrative position, eventually being assigned to Covington Middle School as an Assistant Principal. Her supervisor there was the school principal, Karon Rilling. The two did not enjoy a good working relationship. On August 27, 2003 Rascon filed a grievance against Rilling alleging harassment. *See* AISD's Motion for Summary Judgment, Exh. 1. Feeling retaliated against for filing the first grievance, Rascon filed a second grievance on September 5, 2003 alleging retaliation and discrimination based on her gender and national origin. *Id*. at Exh.1. Rascon alleges that almost immediately after she filed the second grievance Rilling the retaliation worsened. Two weeks later, on September 17, 2003, Rascon filed a charge of discrimination with the TWC and the EEOC. *Id*. at Exh 1.

During the course of that school year (2003-04), Rascon alleges that she was continually demeaned and harassed by Rilling. Rilling, for example, made comments to the principal of a neighboring middle school to the extent that the principal decided not to consider Rascon for a position she had applied for at the school. Rascon alleges that Rilling threatened her with demotion, demeaned her in front of other employees (*e.g.*, "of the 12 assistants I've had in my 12 years as a principal, I have never seen as many problems as with you"), gave her menial tasks to do, and solicited parents to make complaints about Rascon. Eventually, a former supervisor of Rascon's, Frances Bush, went directly to the AISD's administrators (Associate Superintendent Peggy Gordon and Laura Otey, the district's employee relations director) to report what she saw as harassment of Rascon by Rilling. Otey did not feel that the circumstances warranted a request for an investigation. Gordon also testified that she did not believe Rascon was being harassed or retaliated against.

When matters were not resolved through the District, Rascon testified that she decided to come to an agreement with AISD regarding her employment there. Rascon agreed to resign in exchange for a number of concessions on AISD's part. She agreed to drop her grievances and the discrimination charge, and, importantly (for purposes of this litigation), AISD in return agreed that Frances Bush or Glen Nolley – another AISD employee who had worked with Rascon – would provide Rascon's prospective employers with an employment reference as opposed to having Rilling, Rascon's immediate supervisor, do so. In a May 18, 2004 letter to AISD superintendent Pat Forgione, Rascon tendered her resignation (AISD's contention that she was still an employee will also be taken up below). Gordon informed Rascon that she would have to return to sign the agreement which she did on May 24, 2004.

That following summer, after moving to Seattle, Rascon contacted Kelt Cooper, a friend of hers who was superintendent of a school district in Arizona, Nogales Unified School District (NUSD), to see if there were any job openings. He told her that there was at least one job opening – and possibly two – for an assistant superintendent of curriculum position (again, AISD's contention to the contrary will be taken up below). Rascon sent Cooper her resume and one of NUSD's human resources personnel began the employment process which included a check of references provided. That human resources employee, Vickie De Giso, called the human resources department at AISD – after calling Bush who gave her positive feedback on Rascon – who gave De Giso Rilling's number after verifying Rascon's dates of employment. De Giso called Rilling who stated that she could verify that Rascon had worked for her as an assistant principal. De Giso then asked her if that was all, and Rilling said "yes" and added "God bless you" as they hung up. Not surprisingly, De Giso interpreted the parting comment as reflecting negatively on Rascon. Anyways, the end result was that, given the negative nature of the reference, Cooper could not recommend her for employment to his school board, which, according to Cooper, was actively involved in employment decisions and closely scrutinized applicants' references (AISD's different interpretation of the facts will be taken up below).

Upon learning of this alleged breach of her contract with AISD, Rascon filed a second charge with TWC and also filed with the EEOC alleging retaliation. The EEOC's determination letter found that AISD had retaliated against Rascon and violated its settlement agreement with her. Plaintiff, after receiving her right to sue letter, filed suit alleging breach of contract and unlawful retaliation under Title VII.

### IV. ANALYSIS

**A.     Breach of Contract Claim.**

AISD makes several arguments to support its request for summary judgment on Rascon's breach of contract claim. First, in a reprise of its earlier dismissal motion – rejected by this Court and by Judge Yeakel – AISD again contends that the claim is barred for not having been administratively exhausted prior to suit. Second, AISD contends that the facts of the telephone call between Rilling and the NUSD representative are undisputed, and as a matter of law AISD did not breach the agreement in that call. Finally, AISD contends that even if it breached the contract, Rascon suffered no damages. The Court finds all of these arguments unconvincing.

**1.     No Exhaustion was Required.**

The Court need not pause long on the first issue, as it is nearly identical to the arguments already rejected in the context of ruling on Defendants' Partial Motion to Dismiss. *See* Report & Recommendation dated July 18, 2006 (Clerk's Doc. No. 15); Order on Report and Recommendation (Clerk's Doc. No. 23). For all of the reasons already set forth in this Court's Report & Recommendation, the (nearly identical) arguments made in AISD's motion for summary judgment are again rejected. AISD's only "new" argument is that now, at the Rule 56 motion stage, the Court can take into account the facts as amassed in the record, and one of the facts established by the record, it contends, is that Rascon was still employed by the AISD when she signed the settlement agreement. The Court agrees that it appears from the record that Rascon's employment did not end until June 8, 2004. However, this fact has no legal significance on the question of whether Rascon was required to exhaust remedies prior to suit.

In support of its argument, AISD once again cites to *Wilmer-Hutchins Ind. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 295 (Tex. 2001), and *Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294,

295-96 (Tex. App. – Dallas 1994, writ denied).  This Court (and Judge Yeakel for that matter) has already distinguished these cases in its Report and Recommendation, and will not repeat its analysis again.  AISD continues to ignore the plain language of the statute on which it relies for its argument.  That statute provides:

> (a) Except as provided by Subsection (e), a person may appeal in writing to the commissioner if the person is aggrieved by:
>
> (1) the school laws of this state;  or
>
> (2) actions or decisions of any school district board of trustees that violate:
>
> (A) the school laws of this state;  or
>
> (B) a provision of a written employment contract between the school district and a school district employee, if a violation causes or would cause monetary harm to the employee.

TEX. EDUC. CODE ANN. § 7.057(a).  The plain and simple reason why the Plaintiff had no duty to pursue administrative remedies before filing a breach of contract suit is that the claim she is making is neither one that claims AISD "violate[d]" the school laws of Texas, nor one that AISD "violate[d] a written employment agreement.  Simply because Rascon was an employee when she signed the agreement does not make the agreement an "employment agreement."  Indeed, the agreement itself demonstrates otherwise.  The first sentence of the letter agreement states its purpose as "resolving the grievance filed by Ms. Rascon against Dr. Karon Rilling and presently pending at Level IV."  Exh. 10 to Plaintiff's Response (Clerk's Doc. No. 41).  It then goes on to state that certain documents will be placed under seal or be withdrawn from personnel records, that requests for references will be directed to specified people, that Rilling will not provide a reference, and that Ms. Rascon will withdraw her grievance and her charge of discrimination.  *Id.*  All of this was done with the certain

knowledge that Rascon had already tendered a letter of resignation.  To suggest that this document – quite obviously a settlement agreement resolving a pending Title VII charge of discrimination – was in fact an "employment agreement" twists the facts.

### 2. Facts Issues Exist Regarding Breach.

AISD also argues that there is no material fact issue as to whether Rilling breached the contract during her conversation with De Giso.  It contends that Rilling never gave a reference regarding Rascon, and thus she did not breach the provision in the agreement stating that "Dr. Karon Rilling will not provide an employment reference to any prospective employer." Conspicuously missing from AISD's factual recounting of the event, however, is Rilling's "God bless you" comment to De Giso.  This by itself is enough to create a fact issue.  One very reasonable interpretation of such a comment is something along the lines of "we had significant problems with this employee and you will need divine intervention if you expect not to have similar problems yourself if you hire her."  The Court must indulge all reasonable inferences in favor of the non-movant at the summary judgment stage, and thus this argument fails.

Moreover, even setting aside this statement, AISD's argument that Rilling's short conversation with De Giso was not an employment reference for purposes of the contract at best strains credulity.  The call began with a call to the AISD human resources department for an employment reference. That call was then transferred to Rilling. Clearly the caller thought she was obtaining a reference. Compounding matters, Rilling's response to the request for more information, that "she has been advised that she could only confirm" the dates of the former employee's employment, plainly raised red flags, and it would with any prospective employer.  In this type of situation what is left unsaid "says it all," and it is disingenuous for AISD to argue otherwise.

Thus, there are fact issues regarding the telephone conversation and whether it breached the contract which prohibit the entry of summary judgment on this claim.[1]

### 3. Damages.

AISD then contends that even if it did breach the contract, there is no fact issue as to damages because the reason Rascon was not hired was because there were no positions open in NUSD. AISD points to the fact that Rascon never lived in Arizona (where NUSD is), never applied to become certified to hold an administrative position in Arizona, and "never cancelled any plans to move to Arizona because she did not get a job there." *See* Defendant's Reply at 9. They further argue that Cooper and De Giso conceded that there were not actually any jobs open in NUSD. To further emphasize this point, on May 7, 2007, AISD filed its Response to Plaintiff's Sur-Reply to AISD's Reply to Plaintiff's Response to AISD's summary judgment motion. *See* Clerk's Doc. No. 60. In that filing, AISD tenders the entire deposition of Kelt Cooper to demonstrate that there were in fact no positions open in the NUSD, and Plaintiff's attempt to characterize the evidence otherwise is incorrect.

The tortured title of this last pleading speaks volumes on this issue. Any time that the parties have to file five pleadings (with titles like "Response to the Sur-Reply to the Reply to the Response

---

[1] It is interesting to note that AISD seems to misunderstand the summary judgment standard, as it commences its Reply by pointing out what it views as a number of factual "errors" in "Plaintiff's rendition of the facts . . . ." *See* AISD's Reply at 1. Among the "errors" Defendant points out are concerns about the proper characterization of Rascon's and AISD's settlement agreement, whether there were in fact two positions (or any positions) open in NUSD when Rascon sent her resume, whether Rascon's reason that she was not offered a position in NUSD – *i.e.*, because of Rilling's comments to De Giso – is in fact correct, and, finally, the standard operating procedure for reference checks in NUSD. But rather than being "errors," all of these are actually factual *disputes*, as Rascon has submitted summary judgment evidence (or vice verse) that places AISD's version of these events in doubt, and as such, each of these disputes is fatal to AISD's motion.

to the Motion") to demonstrate the absence of a factual dispute, it is a sure sign that there are in fact many disputes. This is no exception. AISD wishes the Court to focus on Mr. Cooper's deposition and conclude from it that there was never a vacancy for which Rascon was being in any way considered by Cooper or others within NUSD. The only way the Court could conclude that, however, would be to ignore the evidence that Rascon did in fact submit an application after learning of one or more openings from a conversation with Cooper, and that De Giso did in fact make calls to AISD to check Rascon's references. A rational fact finder could easily conclude from such evidence that NUSD was not in the business of randomly checking someone's references when they had no interest in potentially hiring them, and infer from that that NUSD did in fact have an interest in hiring Rascon. In short, a fact dispute exists on whether NUSD had a vacancy, and was considering Rascon for it. Because a fact issue exists on this point, and it is material, the Court will recommend that AISD's motion for summary judgment as to the breach of contract claim be denied.

**B.     Title VII Claims.**

Rascon makes two independent Title VII retaliation claims. First, she contends that Rilling retaliated against her while Rascon was Rilling's assistant principal, after Rascon filed a grievance complaining about Rilling. Second, Rascon contends that Rilling's response to the request for a reference from NUSD was also an act of retaliation, this time for Rascon's charge of discrimination. AISD seeks the dismissal of both claims.

To establish a prima facie case of retaliation, a plaintiff must satisfy three elements: (1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action. *Brazoria County v. EEOC*, 391 F.3d 685, 692 (5th Cir. 2004). The

Supreme Court's decision from the last term in *Burlington Northern & Santa Fe Railway Co. v. White* provides the analytical framework for determining what constitutes an "adverse employment action." 126 S. Ct. 2405 (2006). There, the Court explained that "the means by which an employer can retaliate against an employee are not limited to altering his compensation, terms, conditions, or privileges of employment." If further noted that

> [a] provision limited to employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's primary purpose, namely, [m]aintaining unfettered access to statutory remedial mechanisms . . . . Thus, purpose reinforces what language already indicates, namely, that the anti-retaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment.

*Id*. at 2412-13. Thus, to determine "[w]hether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id*. at 2417. "We speak of *material* adversity," the Court continued, "because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.'" *Id*. (citing *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75, 80 (1998)). The Court summarized: "We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Id. at 2409.

AISD first argues that Rascon cannot satisfy the second element of her prima facie case (as to her claim of retaliation for the negative employment reference) because she cannot show, under

*Burlington Northern*, that AISD took an adverse employment action against her. This is so, it argues, because none of the actions Rascon complains of are materially adverse such that they prevented or dissuaded her from making, per *Burlington Northern*, a charge of discrimination. In fact, AISD points out that Rascon filed a second charge of discrimination against AISD after the action, so, *ipso facto*, AISD contends she has excluded herself from coverage under the materially adverse standard.

All of this is well off-base. Retaliation claims can be pursued based on actions that go beyond workplace-related or employment-related retaliatory acts and harm. In short, the provision extends to materially adverse nonemployment-related discriminatory actions that might dissuade a reasonable employee – not the plaintiff herself – from lodging a discrimination charge. *Burlington Northern*, 126 S. Ct. at 2409, 2417. Therefore, it is neither here nor there to discuss what Rascon did. The issue is whether a hypothetical reasonable employee, if she found out that retaliation in the form of negative employment references were being used as a stick to keep employees from exercising their rights under Title VII, would be dissuaded from filing a charge of discrimination. It is an unremarkable proposition to state that they would. Employment references are often the key to obtaining a job, and a negative reference can guarantee that a prospective employee does not obtain a position. Clearly, knowing that one would receive a negative reference for complaining about discrimination could dissuade a person from making the charge in the first instance. Indeed, it was that very fear which no doubt motivated Rascon to insist that Rilling never give out a reference on Rascon.

This principle is also well-established in the cases. Several courts have held that a former employee, such as Rascon, can state a valid Title VII retaliation claim based on being given negative

references after engaging in protected activity. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997); *see also Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006). As the Court has already found, there is a material fact issue as to whether Rilling's conversation with De Giso breached the contract between AISD and Rascon.[2] For the same reasons, there is a material fact issue in this context also as to whether Rilling retaliated against Rascon when she declined to give De Giso more information when prompted and then closed the conversation with "God bless you."

AISD argues that even if Rascon can demonstrate a prima facie case, she cannot show that AISD's reasons for its adverse actions were pretextual. However, as Rascon correctly notes, AISD does not supply a legitimate, non-retaliatory reason for its alleged breach of the settlement agreement. Instead, it simply trots out the same arguments that the Court rejected above in discussing the breach of contract claim. It argues that Rilling did not actually provide an employment reference. As noted above, this argument is, at best, disingenuous. It also repeats its arguments that Rascon was not certified in Arizona and had not moved to Arizona (and had no plans to). The same result obtains as that found in the breach of contract analysis, but for a different reason: these are not legitimate, non-retaliatory reasons for Rilling's actions. Therefore, AISD has

---

[2]AISD also argues that there is no evidence "that Dr. Rilling was motivated by malice or retaliatory intent when she verified the dates of Plaintiff's employment . . . ." *See* Defendant's Reply at 5. First, this ignores Rilling's "God bless you" comment, which would seem to the Court to be some evidence of such an intent. AISD further argues that "the District did not have a retaliatory intent when it provided the name of Plaintiff's former supervisor, Dr. Rilling." *Id*. at 6. It essentially goes on to blame a new computer system being installed the same month when its human resources employees gave De Giso Rilling's phone number. This misses the point. There is a fact question as to whether Rilling, in her capacity as an AISD administrator, had retaliatory intent during that conversation. As a school principal acting in the scope of her employment, Rilling's actions are those of the District. *Cf. Henderson v. Walled Lake Consol. School*, 469 F.3d 479 (6th Cir. 2006) (holding that school *or its administrators* must have had knowledge about student's alleged protected activity to be held liable for coach's alleged retaliatory actions).

failed to carry its burden and the Court will recommend that its Motion be denied insofar as it concerns Rascon's second charge, complaining that AISD retaliated against her in relation to Rilling's job reference.

AISD's more successful argument relates to Rascon's first retaliation claim. AISD contends that the Court has no jurisdiction to consider the facts regarding Rascon's this charge of discrimination because the EEOC and TWC closed her case regarding her claims in connection with those incidents. AISD makes this particular argument for the first time in its Reply brief. The argument was not contained in AISD's original motion. As a result, Rascon asks the Court to disregard this argument because "[i]t is a basic tenet of civil procedure that reply briefing may only respond to the allegations raised in the nonmovant's response." *Z-TelCommun., Inc. v. SBC Commun., Inc.*, 331 F. Supp. 2d 513, 539 (E.D. Tex. 2004). They also cite to a number of other district court cases for the same proposition. While the Court takes notice of these case, it will reject Rascon's argument. One of the cases Rascon cites explains why. In *John Deere Co. v. American National Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987), the Fifth Circuit reversed a district court's grant of summary judgment because it was granted on grounds not urged by the defendant *because plaintiff had no adequate notice of the argument*. *Id*. at 1191-92. Although it is true that AISD raised its argument in its reply brief, Rascon asked for and was granted an extension of time to file a surreply. She has filed that surreply and briefed the argument on its merits. There is no surprise here to Rascon and it is preferable that the court address the argument on its merits rather than refuse on a technical ground, particularly when that argument relates to the Court's jurisdiction.

Rascon's response to this argument is unconvincing. She points to a number of different documents she submitted to EEOC/TWC when she filed her second charge of discrimination based

on AISD's alleged breach of the settlement agreement. These documents contain, for example, a document that provides a painstaking recounting of her issues with Rilling both previous and subsequent to the time she filed her first charge . Therefore, she argues, this information was before the EEOC and the earlier retaliation was within the scope of it's investigation. *See e.g.*, *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) ("A Title VII cause of action may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon any kind of discrimination like or related to the charge's allegations, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination").

The principle noted in *Fine*, while of course correct, is not *apropos* here. In fact, Rascon's argument is an inversion of the rule cited in *Fine*. Here, there was nothing that could "grow out" of Rascon's allegations of retaliation in relation to the settlement agreement. The EEOC determination letter, *see* Plaintiff's Response, Exh. 13 (Clerk's Doc. No. 40), clearly pertains *only* to the events surrounding Rilling's negative job reference. That letter notes that Rascon had previously filed a separate charge of discrimination, but it is clear that the two instances are distinct in the Commission's determination. The letter briefly recounts the facts leading up to its determination and notes that Rascon withdrew her prior charge in exchange for AISD's concessions memorialized in the settlement agreement. It then goes on to find that Rascon was retaliated against by AISD for filing her charge when the negative reference was given. Rascon tries to conflate the two but it is clear that her first charge of discrimination involved a different set of retaliatory acts, for which she was required to exhaust her administrative remedies. *See Vielma v. Eureka Co.*, 218 F.3d 458, 466-67 (5th Cir. 2000) ("The plain language of 42 U.S.C. § 2000e-5(f)(1) requires, as a condition

16

precedent to litigating in federal court, a right to sue letter issued by the EEOC."). Therefore, the Court will recommend that AISD's Motion for Summary Judgment on Rascon's Title VII retaliation claim concerning the events of her first charge of discrimination be granted. As to the second charge, based on Rilling's statements to De Giso, the Court recommends that the motion be denied.

## III.  RECOMMENDATION

The Court **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant AISD's Motion for Summary Judgment *(*Clerk's Doc. No. 33). The Court **RECOMMENDS** that Defendant's Motion be **GRANTED** as to Plaintiff's Title VII retaliation claim related to Rilling's treatment of Rascon after she filed a grievance against Rilling. However, the Court **RECOMMENDS** that Defendant's Motion be **DENIED** as Plaintiff's Title VII retaliation claim involving Rilling's negative job reference (EEOC Charge No. 31C-2004-00762). The Court further **RECOMMENDS** that Defendant's Motion be **DENIED** as to Plaintiff's breach of contract claim.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed

factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 8th day of May, 2007.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE